UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| INSITUFORM TECHNOLOGIES, INC., ) <br> ) <br> Plaintiff(s), ) <br> ) <br> vs. ) <br> ) <br> BRIAN CORBITT, ) <br> ) <br> Defendant(s). ) | Case No. 4:05CV1160 JCH |

## MEMORANDUM AND ORDER

This matter is before the Court on Defendant Brian Corbitt's Motion to Dismiss for Lack of Personal Jurisdiction or, Alternatively, to Dismiss or Transfer for Improper Venue ("Motion to Dismiss"), filed August 12, 2005. (Doc. No. 6). The matter is fully briefed and ready for disposition.

## BACKGROUND

By way of background, Plaintiff Insituform Technologies, Inc. ("Insituform" or "Plaintiff") is a corporation duly organized and existing under the laws of the State of Delaware. (Verified Petition ("Complaint" or "Compl."), ¶ 1). Insituform has its chief executive offices and principal place of business in St. Louis County, Missouri. (Id.). For over twenty years, Insituform has been engaged in the business of providing proprietary technologies and services for rehabilitating sewer, water, and other underground piping systems. (Id., ¶ 6). According to Plaintiff, in providing its services Insituform uses numerous proprietary processes, including a trenchless method for restoring structural integrity to and removing infiltration from sewers. (Id.).

Defendant Brian Corbitt ("Corbitt" or "Defendant"), a resident of the State of Arkansas, was employed by Insituform as a Project Manager trainee beginning in February, 2001. (Compl., ¶¶ 3, 16). On February 18, 2001, Corbitt flew to St. Louis, Missouri, for a one-week initial training

PDF created with FinePrint pdfFactory trial version www.pdffactory.com

session. (Declaration of Chris Greenley, attached to Plaintiff's Memorandum in Opposition to Defendant's Motion to Dismiss, or in the Alternative, to Transfer as Exh. 1 ("Greenley Decl."), ¶ 7). On February 19, 2001, Corbitt signed a Non-Disclosure and Non-Competition Agreement (the "Non Competition Agreement"), stating in relevant part as follows:

> 1. [Corbitt] shall hold in absolute secrecy and treat confidentially all Confidential Material (as hereinafter defined), and not disclose, reproduce, publish, distribute or by any other means disseminate, in whole or in part, any Confidential Material, except as shall be authorized by [Insituform]. [Corbitt] shall not in any manner use for his/her benefit or for the benefit of others any Confidential Material, except as shall be authorized by [Insituform]....
>
> 3. Subsequent to the date hereof and for a period of one year subsequent to the voluntary termination of the employment or other relationship of [Corbitt] with [Insituform], [Corbitt] shall not engage, directly or indirectly, whether as principal, agent, employee, distributor, representative, partner, stockholder or otherwise, in any activities which are in any way competitive with the business conducted by [Insituform], within any territory in which [Insituform] directly or indirectly, conducts such business....

(Non Competition Agreement, attached to Compl. as Exh. 1, ¶¶ 1, 3). Corbitt further was in St. Louis from approximately March 12, 2001, to approximately April 20, 2001, during which time he received training on Insituform's proprietary installation methods, other techniques, methods of doing business and operations. (Compl., ¶ 2; Greenley Decl., ¶¶ 10, 11, 17).[1]

After completing training, Corbitt was assigned to work as a Project Manager out of Insituform's Nashville, Tennessee office. (Compl., ¶ 17). Corbitt later was transferred to Insituform's Houston, Texas office, where he remained until his resignation on or about September 17, 2004. (Id.).

Plaintiff maintains that during his employment with Insituform, Corbitt, "was granted access to and learned of Confidential Information of Insituform including but not limited to production and

---

[1] According to Insituform, it was during this training period that Defendant was provided access to Insituform's trade secrets and other confidential information. (Greenley Decl., ¶ 12).

- 2 -

PDF created with FinePrint pdfFactory trial version www.pdffactory.com

installation techniques and methods, information on how to train employees to effectively and efficiently utilize proprietary processes and install product, information concerning costs, pricing, finances, and marketing methods, and information concerning pricing and bidding strategies, margins and techniques." (Compl, ¶ 19). Plaintiff further maintains Defendant had contacts with customers, and access to information concerning customers, during his employment with Insituform. (Id., ¶ 20).

On April 22, 2002, Corbitt entered into a "Confidentiality, Work Product and Non-Solicitation Agreement" (the "Confidentiality Agreement"), stating in relevant part as follows:

> During my[2] employment with ITI[3] and at all times thereafter:
>
> * I will treat all ITI Information in a secret and confidential manner and comply with all procedures established by ITI for maintaining the secrecy and confidentiality of ITI Information and
>
> * I will not, directly or indirectly, reproduce or copy ITI Information or disseminate, publish or disclose any ITI Information to anyone, other than to ITI employees or other persons who are authorized by ITI to have such ITI Information and
>
> * I will not, directly or indirectly, use any ITI Information for my own benefit or for the benefit of anyone other than ITI....

(Confidentiality Agreement, attached to Compl. as Exh. 2, P. 1).

As stated above, Corbitt's employment with Insituform terminated in September, 2004. (Compl., ¶ 26). According to Plaintiff, after resigning his employment with Insituform, Corbitt accepted employment with rePipe, Inc. ("rePipe"), a direct competitor of Insituform, as a project manager–business development employee. (Id., ¶ 28). Plaintiff alleges that in that capacity, Corbitt

[2] All references to "I", "my", "me" or the like in the Confidentiality Agreement refer to Corbitt.

[3] All references to "ITI" in the Confidentiality Agreement refer to Insituform.

PDF created with FinePrint pdfFactory trial version www.pdffactory.com

is responsible for growing rePipe's trenchless rehabilitation and pipe bursting technology business. (Compl., ¶ 28).

Insituform filed its Complaint against Corbitt in Missouri State Court on or about June 3, 2005. In its Complaint, Insituform alleges that in the course of his post-Insituform employment, Corbitt has violated several terms of both the Non Competition Agreement and the Confidentiality Agreement. (Compl., ¶¶ 35, 41). Insituform seeks both damages and injunctive relief against Corbitt for the breaches of contract. (Compl., Counts I, II). Insituform further seeks both damages and injunctive relief for Corbitt's alleged misappropriation of trade secrets. (Compl., Count III).

Corbitt removed Insituform's Complaint to this Court on July 27, 2005, alleging complete diversity of citizenship exists between the parties. (Doc. No. 1). As stated above, Corbitt filed the instant Motion to Dismiss on August 12, 2005. (Doc. No. 6). Specifically, Corbitt maintains Insituform's Complaint must be dismissed, as this Court lacks personal jurisdiction over Corbitt.

## DISCUSSION

### I. Motion To Dismiss For Lack Of Personal Jurisdiction

In his Motion to Dismiss, Corbitt first contests whether this Court properly may exercise personal jurisdiction over him. In the context of a motion to dismiss, this Court has held as follows:

> The party invoking jurisdiction of a federal court bears the burden to show that jurisdiction exists. To survive a motion to dismiss for lack of personal jurisdiction, a plaintiff is only required to make a prima facie showing of personal jurisdiction over the defendant. If the district court relies on pleadings and affidavits, the court must look at the facts in the light most favorable to the party invoking personal jurisdiction, and resolve all factual conflicts in favor of that party.

Anheuser-Busch, Inc. v. City Merchandise, 176 F.Supp.2d 951, 955 (E.D. Mo. 2001) (internal citations omitted).

PDF created with FinePrint pdfFactory trial version www.pdffactory.com

A federal court engages in a two-step inquiry to determine whether it may exercise jurisdiction over a non-resident defendant. First, the court must determine whether the defendant committed one of the acts enumerated in the state long-arm statute. Angelica Corp. v. Gallery Mfg. Corp., 904 F.Supp. 993, 996 (E.D.Mo. 1995) (citations omitted). If so, then the court must determine, "whether the exercise of personal jurisdiction over [the] defendant comports with the Due Process Clause of the Fourteenth Amendment." Id. (citations omitted).

The Eighth Circuit has held that, "[n]onresidents are subject to personal jurisdiction to the extent that state law allows." Dominium Austin Partners, L.L.C. v. Emerson, 248 F.3d 720, 726 (8th Cir. 2001) (citation omitted). "Missouri liberally construes the provisions of its long-arm statute in order to exercise its jurisdiction to the fullest extent permitted by the Due Process Clause, within the specific categories enumerated in the statute." City Merchandise, 176 F.Supp.2d at 955 (internal quotations and citations omitted); see also Institutional Food Marketing Assoc., Ltd. v. Golden State Strawberries, Inc., 747 F.2d 448, 453 (8th Cir. 1984); Peabody Holding Co., Inc. v. Costain Group PLC, 808 F. Supp. 1425, 1432 (E.D. Mo. 1992) (internal quotations and citation omitted) ("The legislature, in enacting this statute, sought to extend the jurisdiction of Missouri courts to numerous classes of out-of-state defendants who could not have been sued in Missouri under the preexisting law."). "As such, 'the examination of whether Missouri's long-arm statute has been satisfied is coextensive with whether the assertion of personal jurisdiction over the defendant meets the requirements of due process, and the analysis is collapsed into the single question of whether asserting jurisdiction violates the Due Process Clause.'" Meredith, Inc. v. The Marketing Resources Group of Oregon, Inc., 2005 WL 2334294 at * 2 (E.D. Mo. Sep. 23, 2005), quoting Bell v. Imperial Palace Hotel/Casino, Inc., 200 F.Supp.2d 1082, 1085 (W.D. Mo. 2001).

PDF created with FinePrint pdfFactory trial version www.pdffactory.com

In analyzing whether a party's contacts with the forum comport with the dictates of constitutional due process, the Eighth Circuit has held as follows:

> In a series of cases following *International Shoe Co. v. Washington*, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945), the Supreme Court has elucidated the "minimum contacts" standard that must be satisfied before a nonresident can be subjected to the jurisdiction of a state's courts. Due process requires that out-of-state defendants have fair warning that they could be haled into court in a foreign jurisdiction. This requirement is satisfied if the defendant has purposefully directed his activities at residents of the forum…and the litigation results from alleged injuries that arise out of or relate to those activities.
>
> The contacts with the forum state must be more than random, fortuitous, or attenuated. The due process clause forecloses personal jurisdiction unless the actions of the defendant himself....create[d] a substantial connection with the forum State. Once the court has found that the defendant purposefully established the requisite minimum contacts with the forum state, the court still must determine whether the assertion of jurisdiction comports with fair play and substantial justice.

Dakota Industries, Inc. v. Dakota Sportswear, Inc., 946 F.2d 1384, 1389 (8th Cir. 1991) (internal quotations and citations omitted).

In this circuit, the due process standard has been expressed as a consideration of five factors: "1) the nature and quality of contacts with the forum state, 2) the quantity of such contacts, 3) the relation of the cause of action to the contacts, 4) the interest of the forum state in providing a forum for its residents, and 5) the convenience of the parties." Anheuser-Busch, Inc. v. All Sports Arena Amusement, 244 F.Supp.2d 1015, 1020 (E.D. Mo. 2002) (citation omitted). See also BIB Mfg. Co. v. Dover Mfg. Co., 804 F.Supp. 1129, 1132 (E.D. Mo. 1992). The first three factors are primary considerations, while the latter two are secondary. Aylward v. Fleet Bank, 122 F.3d 616, 618 (8th Cir. 1997).

In the instant case, the Court finds the nature, quality, and quantity of Corbitt's contacts with the forum state were significant. For example, as noted above Corbitt spent approximately six weeks in St. Louis, Missouri, in early 2001, during which time he received training on Insituform's

PDF created with FinePrint pdfFactory trial version www.pdffactory.com

proprietary installation methods, other techniques, methods of doing business and operations. Insituform maintains it was during this training period that Defendant was provided access to the trade secrets and other confidential information at issue in the instant litigation. Corbitt further entered into a contractual relationship with Insituform in St. Louis, when he signed the Non Competition Agreement on February 19, 2001.[4] Thus, an Agreement at the heart of the current dispute was entered into in Missouri. Upon consideration of the foregoing the Court finds that, viewing the allegations in the light most favorable to Insituform, the nature, quality and quantity of Corbitt's contacts with Missouri were both strong and beneficial to Corbitt. Further, with respect to the relation of the cause of action to Corbitt's contacts with the forum state, as noted above, Corbitt's contacts with the forum state include entering into the Non Competition Agreement in Missouri, and gaining exposure to the alleged trade secrets and confidential information in Missouri. The relevant contacts thus directly gave rise to the instant cause of action.

With respect to the secondary consideration of the forum's interest in the litigation, Missouri has a significant interest in providing a forum for its resident, Insituform. Angelica, 904 F.Supp. at 997. Finally, while it may be more convenient for Corbitt to litigate this claim outside of Missouri, it does not appear to violate his due process rights to subject him to the jurisdiction of the forum encompassing the headquarters of the company for whom he worked for more than three and one-half years. See Angelica, 904 F.Supp. at 997-98.

---

[4] Defendant maintains the Non Competition Agreement was not executed in Missouri, because the contract was signed only by Corbitt; the line designated for signature by an Insituform representative is blank. (Memorandum in Support of Defendant's Motion to Dismiss for Lack of Personal Jurisdiction or, Alternatively, to Dismiss or Transfer for Improper Venue ("Defendant's Memo in Support"), PP. 8-9). Upon review, however, the Court notes the contract contains no place for the signature of an Insituform representative; rather, the only other signature line is for a witness to Corbitt's signature. (See Non Competition Agreement, P. 3). The contract thus became binding upon the execution of Corbitt's signature alone.

PDF created with FinePrint pdfFactory trial version www.pdffactory.com

In light of the foregoing, the Court finds that Corbitt, "purposely availed [himself] of the privilege of conducting activity within Missouri," Angelica, 904 F.Supp. at 997 (internal quotations and citations omitted), so that the assertion of personal jurisdiction over him does not offend traditional notions of fair play and substantial justice. Dakota, 946 F.2d at 1389. Corbitt's Motion to Dismiss for Lack of Personal Jurisdiction will therefore be denied.

## II. Motion To Dismiss Or Transfer For Improper Venue

In his Motion to Dismiss, Corbitt next asserts this case should be dismissed or transferred on the grounds of improper venue.[5] (Defendant's Memo in Support, PP. 13-14). 28 U.S.C. § 1404(a) governs the ability of a federal district court to transfer a case to another district. This provision states: "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." Id.[6] In considering a § 1404(a) motion, the Court gives great weight to the plaintiff's choice of a proper venue, and will only disturb that choice upon a clear showing that the balance of interests weighs in favor of the movant's choice of venue. City Merchandise, 176 F.Supp.2d at 959. "The interests which the Court should consider include: 1) the convenience of the parties; 2) the convenience of non-party witnesses; 3) the availability of judicial process to compel testimony from hostile witnesses; 4) the governing law; 5) relative ease of access to sources of proof; 6) possibility of delay and prejudice if a transfer is granted; and 7) practical considerations of cost and efficiency." Id. (citation

---

[5] Because this is a removed action, venue is governed by 28 U.S.C. § 1441(a). See Polizzi v. Cowles Magazines, Inc., 345 U.S. 663, 665 (1953); MGR, Inc. v. Resolution Graphic Resources, Inc., 2003 WL 22161585 at *4 (D. Minn. 2003). Under that statute, venue is proper for an action that has been removed in, "the district court of the United States for the district and division embracing the place where such action is pending." See 28 U.S.C. § 1441(a). This lawsuit originally was brought in St. Louis County, Missouri, and thus proper venue for the removed action rests in this Court. Defendant's Motion to Dismiss for Improper Venue thus will be denied.

[6] Plaintiff does not dispute this action could have been brought in Arkansas.

- 8 -

PDF created with FinePrint pdfFactory trial version www.pdffactory.com

omitted); see also Terra Intern., Inc. v. Mississippi Chemical Corp., 119 F.3d 688, 691 (8th Cir.), cert. denied, 522 U.S. 1029 (1997). Further, "[t]he 'primary, if not most important' of these interests is the convenience of the witnesses." City Merchandise, 176 F.Supp.2d at 959, quoting May Dept. Stores Co. v. Wilansky, 900 F.Supp. 1154, 1165 (E.D. Mo. 1995).

Upon consideration, the Court finds the balance of factors taken into account under § 1404(a) favors denying Corbitt's Motion to Transfer. First, as to the convenience of the parties, the Court finds this factor is neutral; in other words, while it would be more convenient for Corbitt to litigate this case in Arkansas, it is more convenient for Insituform to litigate here. With respect to the convenience of non-party witnesses, Defendant states only in general terms that, "[t]he witnesses who can speak to [the prosecution and defense of Insituform's claims], including employees of [Defendant's] current employer and potentially customers, all reside out of state." (Reply Memorandum in Support of Defendant's Motion to Dismiss, or in the Alternative, to Transfer, P. 10). Defendant fails to detail who the potential witnesses residing in Arkansas might be, however, or to state even in general terms the nature of the testimony they would provide. Plaintiff conversely asserts the majority of witnesses relevant to Plaintiff's claims, including witnesses who will testify as to Insituform's trade secrets, its business and market share, the training Defendant received, and the agreements at issue, may be found in Missouri. (Plaintiff's Memorandum in Opposition to Defendant's Motion to Dismiss, or in the Alternative, to Transfer, P. 14). The Court thus finds consideration of the convenience to non-party witnesses, when viewed in conjunction with the Court's preference for maintaining Plaintiff's choice of forum, weighs in favor of keeping the action in this Court.

Finally, the Court's review of the record demonstrates the remaining factors either are neutral, or weigh in favor of maintaining jurisdiction of this action in this Court. Based on the foregoing, the

PDF created with FinePrint pdfFactory trial version www.pdffactory.com

Court concludes Defendant has failed to meet his burden under § 1404(a) of establishing that transfer is warranted, and so his Motion to Transfer must be denied.

## CONCLUSION

Accordingly,

**IT IS HEREBY ORDERED** that Defendant's Motion to Dismiss for Lack of Personal Jurisdiction or, Alternatively, to Dismiss or Transfer for Improper Venue (Doc. No. 6) is **DENIED**.

Dated this 24th day of October, 2005.

/s/ Jean C. Hamiton
UNITED STATES DISTRICT JUDGE

PDF created with FinePrint pdfFactory trial version www.pdffactory.com